E. MARTIN ESTRADA
United States Attorney
MACK E. JENKINS
Assistant United States Attorney
Chief, Criminal Division
ROGER A. HSIEH (Cal. Bar No. 294195)
Assistant United States Attorney
Major Frauds Section
     1100 United States Courthouse
     312 North Spring Street
     Los Angeles, California 90012
     Telephone: (213) 894-0600
     Facsimile: (213) 894-6269
     E-mail:    roger.hsieh@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | No. CR 2:23-00023-FMO |
|---|---|
| Plaintiff, | GOVERNMENT'S SENTENCING POSITION REGARDING DEFENDANT NICOLE KALAMAOKEOLA GUIU |
| v. | |
| NICOLE KALAMAOKEOLA GUIU, | Hearing Date: January 25, 2024
Hearing Time: 4:00 p.m. |
| Defendant. | Location:    Courtroom of the Hon. Fernando M. Olguin |

Plaintiff United States of America, by and through its counsel of record, the United States Attorney for the Central District of California and Assistant United States Attorney Roger A. Hsieh, hereby files its sentencing position with respect to defendant NICOLE KALAMAOKEOLA GUIU.

//

//

This sentencing position is based upon the attached memorandum of points and authorities, the Presentence Investigation Report, the under-seal victim-impact statement and exhibits, the files and records in this case, and such further evidence and argument as the Court may permit.

Dated: January 8, 2024          Respectfully submitted,

E. MARTIN ESTRADA
United States Attorney

MACK E. JENKINS
Assistant United States Attorney
Chief, Criminal Division


    /s/
ROGER A. HSIEH
Assistant United States Attorneys

Attorneys for Plaintiff
UNITED STATES OF AMERICA

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.     INTRODUCTION**

While on probation for felony embezzlement, defendant NICOLE KALAMAOKELOA GUIU abused her position of trust as Assistant General Manager of a global hotel chain (the "Victim Hotel") and embezzled more than $440,000 in a sophisticated scheme that lasted about eight years. After she was confronted by the Victim Hotel, defendant tried to cover her tracks by wiping and reformatting her laptops and cell phone before returning them to the Victim Hotel.

Defendant pleaded guilty to bank fraud in violation of 18 U.S.C. § 1344(2) as charged in an Information, an offense that makes her ineligible for probation. (Dkt. 1.) Defendant did not enter into a plea agreement, but she admitted the factual basis in the parties' Joint Rule 11 Statement. (Dkt. 3.)

In the United States Pretrial and Probation Office's ("USPO") Presentence Investigation Report ("PSR"), it determined that: (1) defendant's adjusted offense level is 23; (2) defendant's criminal history category is II; and (3) the applicable sentencing guidelines range is 37 to 46 months, two to five years' supervised release, and a fine from $15,000 to $1,00,000. (Dkt. 32.) The USPO also filed a disclosed recommendation letter in which it recommended that the Court sentence defendant to 30 months' imprisonment, three years' supervised release, and a $100 special assessment. (Dkt. 31.)

The government concurs with the USPO's calculation of defendant's offense level and understands that with the November 1, 2023, amendments to the U.S. Sentencing Guidelines ("USSG"), defendant may have a Criminal History Category of I and a guidelines range of 33 to 41 months' imprisonment. For the reasons outlined

below, the government submits that a total sentence of 36 months' imprisonment, 3 years' supervised release, a $100 special assessment, and an order requiring defendant to pay $440,502.31 in restitution, is sufficient, but not greater than necessary, to achieve the goals of sentencing set forth in 18 U.S.C. § 3553(a).

**II.   FACTUAL BACKGROUND**

In 2006, defendant was convicted of four felony counts of embezzlement and served just one month of a 10-year sentence. (PSR ¶ 42.) She was placed on probation through July 22, 2013. (Id.)

While on probation for her felony embezzlement convictions, defendant began a bank fraud scheme as Assistant General Manager for the Victim Hotel from at least December 2009 through June 2017. (PSR ¶ 8.) As Assistant General Manager for the Victim Hotel, defendant was entrusted with significant trust and autonomy. For example, defendant: (1) managed staff accountants and they reported to her; (2) was a Human Resources Manager and had oversight of payroll and accounting; (3) was one of only two people with heightened security to create an employee's user profile; (4) managed night shift auditors; and (5) could process refunds to a customer's credit or debit card for thousands of dollars through a computer without any audit. (PSR ¶¶ 9-11; GUIU_00449-50.)

For about eight years, defendant provided unauthorized refunds from the Victim Hotel to debit cards, and ultimately bank accounts, that defendant controlled. Defendant made well over 100 unauthorized refunds from the Victim Hotel to her bank accounts totaling at least approximately $440,502.31. (GUIU_001-09.) The General Manager calculates that defendant embezzled more than $641,000 from the Victim Hotel. (Victim-Impact Statement.)

Defendant's position as Assistant General manager allowed her to concealed her embezzlement scheme in multiple ways:

<u>First</u>, defendant created a secondary login for another employee using defendant's unique security as an Assistant General Manager. Defendant would then use this employee's secondary login without authorization to issue the fraudulent refunds.  (PSR ¶ 11.)

<u>Second</u>, the Victim Hotel used a system that created a batch report containing the Victim Hotel's financial activity from the previous day, including refunds provided to customers.  The batch report was submitted to the General Manager.  (GUIU_00443-44.)

To conceal her fraud scheme, defendant required staff to provide the hard copy batch report directly to defendant and not to the General Manager.  Defendant had managerial authority over these staff members and could direct them to give her the reports directly.  For batch reports reflecting defendant's unauthorized refunds, defendant would either withhold the batch report from the General Manager or would delete or otherwise manipulate the entries showing unauthorized refunds according to the General Manager.  (PSR ¶ 10; GUIU_00443-44.)

<u>Third</u>, defendant used her supervisory role to have an employee remove evidence from defendant's office so that the General Manager would not detect defendant's fraud scheme while defendant was on temporary assignment elsewhere.  (GUIU_00449.)

<u>Fourth</u>, defendant knew through her role as Assistant General Manager that refunds over $5,000 needed to be approved by the General Manager.  Defendant purposely issued refunds under $5,000 to avoid suspicions of the General Manager.  (PSR ¶ 10; GUIU_000450.)

Defendant did not stop her years-long embezzlement scheme until she was confronted by the Victim Hotel in 2017.  To further cover her

scheme, defendant reformatted her two laptops and cell phones before returning them to the Victim Hotel.  (PSR ¶ 14.)

### III. THE PRESENTENCE INVESTIGATION REPORT CORRECTLY CALCULATES DEFENDANT'S OFFENSE LEVEL

The USPO calculated defendant's adjusted offense level as 23 using: a base offense level of 7 (USSG § 2B1.1(a)(1)); a twelve-level enhancement for a loss of more than $250,000 but not more than $550,000 (USSG § 2B1.1(b)(1)(G)); a two-level sophisticated means enhancement (USSG § 2B1.1(b)(10)(c); and a two-level abuse of position of trust enhancement (USSG § 3B1.3). (PSR ¶¶ 22-33.)  After a three-level reduction for acceptance of responsibility, the USPO calculated defendant's total offense level as 20.  (PSR ¶ 36.)  The USPO also calculated a criminal history category II.  (PSR ¶¶ 43-45.) Based on a total offense level of 20 and a criminal history category of II, the USPO determined that the applicable guidelines range is 37 to 46 months' imprisonment (PSR ¶ 88), two to five years' supervised release (PSR ¶ 91), a $15,000 to $1,000,000 fine (PSR ¶ 96), $440,502.31 in restitution (PSR ¶ 98), and a $100 special assessment (PSR ¶ 95).  The government does not object to the PSR's calculations but notes that defendant may now be in Criminal History Category I. The September 2023 PSR correctly added two criminal history points to defendant's score because she committed the instant offense while on supervised probation for embezzlement.  (PSR ¶ 44.)  The November 1, 2023, amendments to the USSG provide for an increase in one criminal history point for committing the instant offense while on probation, but only if defendant receives seven or more criminal history points. USSG § 4A1.1(e) (2023).  Thus, it appears that defendant may have one criminal history point and may be in Criminal History Category I.

4

The corresponding guidelines' Range with a total offense level of 20 and Criminal History Category I is 33 to 41 months' imprisonment.

Defendant was convicted a of bank fraud, a statute that carries a statutory maximum of 30 years' imprisonment. 18 U.S.C. § 1344. Thus, a base offense level of 7 applies. See USSG §2B1.1(a)(1) (baseline offense level of 7 for offense of conviction with statutory maximum term of imprisonment of 20 years or more). Here, the parties agree, and the evidence establishes, that defendant caused at least $440,502.31 in actual losses. (PSR ¶ 12; Dkt. 3; GUIU_001-009.) Thus, a 12-level enhancement for a loss of more than $250,000 under USSG § 2B1.1(b)(1)(G) applies.

### A. Defendant Abused Her Position of Trust

A two-level "Abuse of Position of Trust" enhancement applies if defendant's position of trust contributed in a significant way to the facilitation of the commission or concealment of the offense. USSG §3B1.3, n.1. Although the government need not show both, the enhancement applies because defendant's position of trust as an Assistant General Manager of the Victim Hotel allowed her to both (1) facilitate her fraud scheme; and (2) conceal her fraud scheme. As noted in the factual basis, PSR, and attached exhibits, defendant had managerial discretion and considerable deference as an Assistant General Manager, including: (1) managed staff accountants and they reported to her; (2) was a Human Resources Manager and had oversight of payroll and accounting; (3) was one of only two people with heightened security to create an employee's user profile; (4) managed night shift auditors; and (5) could process refunds to a customer's credit or debit card for thousands of dollars through a computer without any audit. (PSR ¶¶ 9-11; GUIU_00449-50.)

1.   **Defendant Facilitated the Scheme Through Her Position of Trust**

Through her position of trust as Assistant General Manager, defendant had the ability to issue refunds to Courtyard Marriott customers using computers at the Courtyard Marriott. Abusing her position of trust, defendant issued more than 100 unauthorized refunds from the Courtyard Marriott's bank accounts to debit cards linked to her First City Credit Union accounts. Thus, defendant's position as Assistant General Manager significantly allowed her to facilitate the fraud scheme, and on this basis alone, the enhancement should apply.

2.   **Defendant Concealed Her Scheme Through Her Position of Trust**

Separately and alternatively, defendant's role as Assistant General Manager allowed her to conceal her scheme in a significant way. She did this in multiple ways, as described above:

First, defendant created a secondary login for another employee using her unique security as Assistant General Manager. Defendant used this employee's secondary login without authorization to issue the fraudulent refunds. The secondary login allowed defendant to conceal her fraud scheme so that the fraud would not be tied to her own login and identity.

Second, defendant had managerial authority over staff members and directed staff to provide hard copy batch reports containing financial information directly to her and not to the General Manager. To conceal her embezzlement scheme, defendant would receive the hard copy batch reports and either withhold them from the General Manager or would delete or otherwise manipulate the entries showing unauthorized refunds.

Third, defendant used her supervisory role to have an employee she supervised remove evidence from defendant's office so that the General Manager would not detect defendant's fraud scheme while defendant was on temporary assignment elsewhere.

Fourth, defendant knew through her role as Assistant General Manager that refunds over $5,000 needed to be approved by the General Manager. Defendant purposely issued refunds under $5,000 to avoid suspicions of the General Manager.

Defendant used her position as Assistant General Manager to conceal her scheme in multiple ways, and the abuse of position of trust enhancement applies. See, e.g., United States v. Christiansen, 958 F.2d 285, 288 (9th Cir. 1992) (affirming application of abuse of trust enhancement for manager that embezzled because her position "made it possible for her to conceal the theft for an extended period of time" and provided her access to cash).

**B.   Defendant Employed Sophisticated Means**

Under USSG § 2B1.1(b)(10), defendant intentionally engaged in sophisticated means and a two-level enhancement applies. (PSR ¶¶ 26-27.) Sophisticated means refers to "especially complex or especially intricate offense conduct pertaining to the execution or concealment of an offense." USSG § 2B1.1(b)(10), n.9(B) (emphasis added). As described above in detail, defendant employed especially intricate conduct in concealing her offense: creating and using a secondary login for another employee, directing staff to provide defendant with reports and then doctoring or withholding them, directing a staff member to remove evidence from defendant's office, purposely issuing refunds under $5,000 to avoid detection, and wiping her work digital devices before returning them to the Victim Hotel. Thus, the

7

sophisticated means enhancement applies. See United States v. Jennings, 711 F.3d 1144, 1145, 1147 (9th Cir. 2013) (affirming application of sophisticated means enhancement for use of bank account with deceptive name and noting "[c]onduct need not involve highly complex schemes or exhibit exceptional brilliance to justify a sophisticated means enhancement."); United States v. Tanke, 743 F.3d 1296, 1307 (9th Cir. 2014) (affirming sophisticated means enhancement for defendant that concealed his embezzlement through creation of false documents).

Separately, defendant executed the scheme using sophisticated means which provides an alternative basis for the enhancement to apply. As noted in the Exhibits, defendant took advantage of the Victim Hotel's rewards reimbursement program and embezzled those funds. (See GUIU_000446.) The Victim Hotel would be reimbursed at a higher rate for rewards stays when the occupancy rate was higher. (Id.) Defendant would reimburse her own debit card the full amount the Victim Hotel received from the rewards program while altering the Victim Hotel's books to make it appear as if they received less from the rewards program, corresponding to a lower occupancy rate. (Id.)

**IV. THE GOVERNMENT'S RECOMMENDED SENTENCE IS REASONABLE AND APPROPRIATE PURSUANT TO THE 3553(A) FACTORS**

The government requests that the Court adopt the PSR's factual findings and guidelines calculations. The government also requests that the Court adopt the government's sentencing recommendation and sentence defendant to a total of 36 months' imprisonment, three years' supervised release, and order that defendant pay $440,502.31 in restitution and the mandatory $100 special assessment.

The recommended sentence, is appropriate given the 3553(a) factors, including the nature and circumstances of the offense, history and characteristics of defendant, and the need to afford adequate deterrence for criminal conduct. These factors weigh in favor of a sentence of 36 months' imprisonment.

### A. Probation is Not Available for Defendant's Offense

As noted in the PSR, defendant was convicted of a Class B felony and probation is <u>not</u> an available sentence by statute. (PSR ¶ 92; <u>see also</u> 18 U.S.C. § 3561(a)(1).) Further, because the applicable guidelines' range is in Zone D, defendant is ineligible for Probation. (PSR ¶ 93.)

### B. Nature and Circumstances of the Offense

Defendant executed a long-running scheme to embezzle hundreds of thousands of dollars from the Victim Hotel by abusing her position of authority. This was not a momentary lapse in judgment. Instead, defendant embezzled from the Victim Hotel more than 100 times over a period of about eight years. Defendant actively concealed her embezzlement by taking steps such as creating a fake login with another employee's identifying information and falsifying reports. Defendant did not stop until she was caught. Further, defendant erased company laptops and phones to further conceal her offense. Defendant's conduct was undoubtedly serious, took a toll on the Victim Hotel, and warrants a serious custodial sentence. As noted in the under-seal victim-impact statement, defendant caused an employee of the hotel enormous "anxiety and emotional turmoil" through her embezzlement scheme. Defendant further cost the Victim Hotel: it had to have its employees spend long hours reviewing defendant's theft and pay an outside firm to audit the embezzlement.

9

### C.     History and Characteristics of Defendant and Need for Deterrence

Defendant caught a break and only served one month in custody for a 10-year sentence for her four felony embezzlement convictions. Rather than learn from her prior crimes, defendant seemed emboldened and engaged in a larger scale, approximate eight-year embezzlement scheme while she was on supervised probation.  Defendant's actions show a lack of respect for the law.  A significant period of incarceration is warranted because a one-month custodial sentence did not deter defendant from committing the instant offense.

In mitigation, defendant is educated and reports suffering from an abusive former partner.  Defendant attended private elementary school, graduated from high school, and obtained her associate's degree.  (PSR ¶¶ 65-66.)  Defendant appears to have professional skills and be capable of maintaining employment.  Defendant, however, chose to use her skills to embezzle rather than advance the interests of her employers.  The mitigating factors point towards a sentence away from the high-end of the guidelines' range despite defendant's lack of respect for the law.

## V.    CONCLUSION

For the foregoing reasons, the government submits that its recommended sentence is sufficient, but not greater than necessary, given the history and characteristics of defendant and the nature and circumstances of the offense.  Accordingly, the government requests that the Court sentence to 36 months' imprisonment, three years' supervised release, and order that defendant pay $440,502.31 in restitution and the mandatory $100 special assessment.